2-14-0942 Drs. Friedman, Schatz, Chernoff, Vasilopoulos, and Goldberg Plaintiffs of Hellas, the Governor Jesse White, not individually, but as the Secretary of State of the State of Illinois Defendant Kelly, arguing altogether Plaintiffs of Hellas, Attorney Mr. David A. Novoselsky Plaintiffs of Hellas, Attorney Mr. Kevin Shapiro So, with those thoughts in mind, Mr. Novoselsky, you may proceed. I apologize, although the spirit is just fine to flush this little bandage. Good morning, David Novoselsky, on behalf of the appellants. Let me commit the sin of brevity, if I will. The Court was kind enough to allow us to supplement our argument with a supplemental brief after the Supreme Court announced the pension reform case. I think the heart of what I'd like to address to the Court today is laid out pretty well in that case. The record below, and the record of the legislative history, is not really in dispute. There is, and it's at pages 11-13 of our initial brief, and again at pages 2-3 of the reply brief, the legislature, when it adopted this surcharge, was very straightforward. Mr. Novoselsky, if I could just briefly interrupt. I did want to ask you some questions to narrow the focus of the arguments. In reviewing the briefs, I didn't see where you presented an argument as to the $1 surcharge. So, I mean, are you waiving that? No, we believe that the clearer focus would be the $2 charge. The $1 charge is kind of in one of those legislative limbo's. It was tacked on, it was an additional, it was a surcharge that is coupled with this. There's a paucity of legislative intent, period. Unlike the state park issue, which is very clear. I mean, they can be discoupled, or maybe that's the wrong word.  Decoupled, thank you. I don't think they're necessarily joined at the hip. We raised the issue, I think we were candid enough to say even before Judge Mullen down below, there is no legislative history. It appears to be yet another instance of adding a surcharge for what is really a general revenue. I only raise it because I'm anticipating you might have an argument that somehow it's forfeited because you didn't develop it in brief. And then you also have the issue, challenging legislation based on equal protection, due process, and the uniformity clause. But again, there's an argument, did you develop the argument in due process and equal protection? Or are you proceeding basically on the uniformity clause? Well, yes and no, and I'm sorry that's a wonderful trick most appellate lawyers have. If you look at the pension decision, the uniformity clause, as the Supreme Court conceived, is really a due process, equal protection morph. Illinois and the cases that talk about the uniformity clause have dealt with it as based on the federal case, and in fact it's... You would agree that if it passes constitutional muster under the uniformity clause, then it passes the constitutional muster under equal protection and due process, correct? That's the history of... They're pretty well intertwined. The uniformity clause, and I think it was either in Crocker or in Boynton, talks about the uniformity clause is a more specific subset of due process. And the pension reform case did not involve a challenge based on the uniformity clause? Not specifically. The contract clause and the pension rights clause, correct? Yes, but the court did... I agree. The court addressed it, and again it's in paragraph 68 of its opinion, which starts at page 27. It talks specifically about... Here, the United States Supreme Court has made it clear that the United States Constitution bars government from forcing some people alone to bear public burdens which in all fairness and justice should be borne by the public as a whole, it may cite. However, the General Assembly, they're talking about the Pension Reform Act, dealt with the challenges facing our state by doing just that. It made no effort to distribute the burdens evenly among Illinoisans, I guess it's an interesting phrase, you don't hear much. It did not even attempt to distribute the burdens evenly among those upon which it had contractual relationships. So the Supreme Court, I think, recognized that the fundamental issue was the failure to put this burden on everyone in the state, recognizing it's a general revenue burden. And in this case, it's interesting because if you look at the arguments articulated below by the Attorney General very well, I mean, Mr. Inouye is very bright, very articulate, and again in the brief here they say, look it, the lawyer can come up with legislative intent and if a lawyer on behalf of the state can articulate a potential legislative intent, even though it's not articulated, we can do it for the legislature, which is interesting because when you look at the debates, and you look at what we have in the record, Secretary White, who is the defendant here in his official capacity, sent out notices to everyone on the renewal saying, look it, I don't agree with this, I think it's wrong, I'm a state official, I can't change the law, I think it's wrong. So we have a unique argument here. Those are all interesting arguments that you made initially, but then the state comes back with an argument as to the sufficiency of their explanation. The burden shifts to you then. You have to provide an explanation that their reasoning is insufficient as a matter of law and unsupported by the facts. How can you make that argument to us? Our position is very simple. Their explanation is not the explanation. The cases say when the legislature has announced a rationale, it becomes the burden of the party challenging to show that it's wrong. Nevertheless, they're not prohibited. Do you have any case law that says even though you can make an argument that the Senate in this case articulated a basis that looked like it was revenue raising, not for the specific environmental purposes the court thought it was, do you have any case law that says counsel can't provide a reasonable relationship argument after the fact or preclude it from doing that? My argument is there is no case. That's a rationale that is contrary to the Illinois Supreme Court decision saying we look to the legislative intent, including the pension reform case. The American Beverage Association case cited does say that a taxing entity can't create an after-the-fact justification for tax classification. Based on the legislative intent. That case doesn't say, and I read it carefully, that the rationale can be developed whole cloth during the course of the challenge by the attorney. So now we're saying basically, not even basically, we have a state official who is a defendant who is on record saying, I don't believe we should be doing this. The attorney who ostensibly represents that official, and government lawyers under the Fidelia case are still bound by the rule saying you cannot take a position contrary to your own client, who gets up in front of the court. It's a unique case, Judge, I'm not questioning that. Says, look it, even though Secretary White, who is my client, says this is general revenue, I don't think we should be burdening this class of people with this burden because it is general revenue. We have the legislature and the only argument in the Senate, and it is on a proposed amendment which failed, from the sponsor of the act. Says, look it, you're right, we can't raise taxes, it's not popular, but we can't let the state park who we've shorted the entire department for ten years, we've got to figure out a way to make the toilets wash, which I don't disagree with. Should have raised taxes, which is what the Supreme Court said in pension reform. Again, pension reform is a different issue, different constitutional challenge. In pension reform, the General Assembly was taking away an established right, as opposed to imposing a surcharge or a new tax. They're two different things. Perhaps, and I'm not trying to be cute with the court. You are being cute because you're trying to argue something that does not directly apply to, or even narrowly apply to your argument. The pension reform case was different. Yes, it was, I agree. But the principle of law we're citing it for is directly applicable here. We have a unique argument raised below, that even though the legislative intent, which has always been the bedrock, both in this court, the Supreme Court, and the trial courts, we look to the legislative intent. But do we do that exclusively? I understand the argument that clearly the Senate debate, Senator Hutchinson, the sponsor, indicated something other than what I'm sure is going to be argued by the other side. But is that exclusive? Can't courts uphold a taxing classification if a state of facts can reasonably be conceived that would sustain the legislation irrespective of the debates? Because, you know, I think your argument is very good, and you're arguing what you have to. The legislative history would indicate there's a problem with this, therefore that's the end of the inquiry. That is your argument. It has to be. Well, if it is, and it can be, and I think it's correct, then we're in a position of saying that the intent of the statute, if you look at the Eastern Star case, the Supreme Court in Eastern Star, which they struck down the statute, talks about, I have it here if you give me just a second, that it was narrowly, the legislature narrowly, I apologize, tailored the act to a very specific purpose. So we are really, let's say I take the court's argument as the position of the state and the question of the court. If, in fact, we're not using the legislative intent exclusively. And obviously it's a substantial factor, I would agree with you, but it doesn't end the inquiry. Well, here's the problem. What else do you look to? If you simply look to an after-created argument by counsel, and if you look at their argument and say, well, the legislature could have come up with this rational basis, there's no evidence of that. In fact, then what you're allowing is we can now speculate, if there is an independent basis, it has not been articulated in a case, nor has it been articulated by the appellee here. Their argument, when you read it, is you can interpolate the legislative intent based on our argument. So now we're saying... How do you understand or how do you score that argument with a statement by the Supreme Court in the Allegro services limited cases? The Supreme Court says courts will uphold tax and classification of, quote, if a state of facts can reasonably be conceived that would sustain the classification. Does that sound strictly like a legislative intent analysis? Well, when you look at Allegro, they in fact look at the legislative intent. They had a stated intent in Allegro like they have in, I'm very blunt, every other case challenging under uniformity. There's at least an articulation. Even the case that I just lost, which is now on rehearing, which dealt with a statement, interestingly enough, there was no legislative intent. They go back down after the original tax is stricken, and in ten days they suddenly have a new legislative intent. But the point is even in that case there was an issue, and Crocker's done it, Boynton's done it, Allegro, all of them have looked at the legislative intent. In Allegro it says, okay, here is the stated intent, and there's an argument as to why there's a rational basis. Okay, we can do that. Here we have something sui generis. Well, how about the argument from the state that here you only have statements of four senators, nothing from Speaker Madigan or anybody from the Illinois House? I would deal with that saying... Let me finish the question. I'm sorry, I apologize. And we have the uniformity test that were to apply. Right. In contrast to just those four statements. Okay, then you can never have legislative intent. You would have, and I pointed this out, first of all, the House and Senate jointly adopted this or it wouldn't have gone into law. Speaker Madigan, who is usually extremely articulate, was not quoted in the pension reform case either, because in the pension reform case they looked at the sponsor's statement. The argument we had below was, well, you need to have every person in the General Assembly, both the House and the Senate, opining or stating their position. You have a vote, and the vote was to adopt this. The only statement in the record of legislative intent are these statements by the Senate proponent, which if you look at pension reform, they say specifically we're looking at the statements of the sponsors. They don't say we look at every one. If you have to have legislative intent, and we raised this below, this is very clearly articulated, if the argument is you must have a statement from every single person who votes for it or from everybody who votes against it, you will never have legislative intent. That has not been the way the Supreme Court of Illinois looks at it or the United States Supreme Court. I think we can agree with that. I think the position is well taken on that issue. But again, I'm having trouble. Is that the exclusive test? Well, if you only look at the legislative intent, then there wouldn't be much to argue. Well, I apologize, and I'm going to try to get to the other four. It's also the fact that, I don't mean to cut you off, but in the pension reform case, you had a long, substantial history of the pension crisis and the underfunding. You don't have that here. Yes, you do, sir. Very respectfully, you have the statement. You have a few years of underfunding. Yeah. We've been shorting DNR for ten years. Everybody agrees to that. And nobody, even the opponents of the bill, all agree. And you have a statement. Look, I wish we could get this out of GRF, General Revenue Fund. We can't. So we've got to beef up our general revenues, take the money out of the surcharge, and put it here. If I could just go back for a second to answer your question, Justice Hudson. There is no other test. If there is another test, if this isn't the test, then what is? Every other test, if you will, looks at the way to justify the legislature's decision. Otherwise, we're dealing with a separation of powers issue. If you allow the executive branch here, in theory, Secretary of State White, to say, well, I think this is a rational basis, you come back to the same thing. It's the rational basis the legislature had for imposing this. If this court, very respectfully, I don't know what you're going to do, but if the statement is, well, it's not the exclusive test, this court would have to say, what is the correct test? The court has always, in a uniformity challenge, due process, equal protection, looked to see if the legislature properly imposed the burden on a limited class. You don't look, there is no test that says you will look to see if a very articulate, again, Attorney General did a brilliant job of articulating it, and even Judge Mullen said, well, you know, they could have used this. So the statement is not that the legislature drafted it for this purpose. The statement is, a good lawyer after the fact can create legislative purpose. So we are still dealing with a legislative purpose argument. The opposition to this addresses legislative intent based on a post hoc creation, admittedly contrary to not just the legislative history, but the statement of the state official who supposedly is making the statement. Now let me ask you this. If we were not to accede to your argument about the legislative debates being controlled, what is your reaction to the state's argument? You know, the state's justification is that there's a reasonable relationship between the tax classification and the object of legislation because people who do not own cars do not contribute to pollution and the need for remedial measures to the same degree as people who own cars. So on the merits of that argument, what's your response to that? My argument, my response would be there's no evidence being presented to support that, and the state court, the toilets at the state park, which is where this money goes presumably, has nothing to do with vehicle pollution. This creation of, well, it could have been an anti-pollution method, then I guess you could tax every coal burning power plant in the state of Illinois to support the state parks. Pollution is another GRF issue. So then you're shifting the burden of fighting pollution to a limited class that, frankly, it makes it even worse. So what we're trying to do is we're trying to band-aid something over an articulated statement. We're trying to band-aid over, say, now let's talk about pollution. There's no issue, there's no evidence that was before the trial court or before this court that this is an anti-pollution method, and let me come back very briefly. Then we go back to the statement in pension reform, albeit it's a different issue, that talks about measures taken to put a specific, a general issue, and I think we can all agree that air pollution is an issue that affects everybody. That's a little hangover from the stroke. And now we're putting the burden exclusively on those who own a vehicle and register their license plates. So we're fitting even more by that into the prohibition that the U.S. Supreme Court and the Illinois Supreme Court says you can't do, you can't single out one group to deal with a general thing. Eastern Star, for example, which they cite, the legislature says look, we're taxing somebody in the health care business to support a health care need. This case is also unique. You're going after people who have nothing to do with the failure to fund the state park system, and you're also imposing on them, and the phrase is, as opposed to all Illinoisans, if that's the way it's, I've never heard that before, but the court likes it, all Illinoisans the burden of fighting air pollution. I wish I'd known this last year. This panel is inspired and directed, you know, but you will have an opportunity to address the board again. Thank you. Thank you very much for your argument. Counsel, you may proceed. Ms. Shapiro. May it please the court, counsel. I'm Carolyn Shapiro, Illinois Solicitor General for the Defendant Accolade. I'd like to start by referring back to some of the things you discussed. First of all, the challenge to the $1 fee to go to the Illinois State Police Vehicle Fund has been forfeited. It is absolutely our position, and Mr. Dovosowski has said nothing to alter that. Did he argue it? I didn't see it. Was it in his brief? Did he address that? He mentioned it very briefly by a sentence or two, but no, he did not address the constitutional challenge. Likewise, he did not discuss the due process or equal protection challenges, so those are forfeited as well. I'd like to say a couple of things about the pension case. It is wholly irrelevant. It was decided under, as you pointed out, under the pension clause of the Constitution. The language that Mr. Dovosowski quotes has to do with under what circumstances can a government say, well, we cannot honor a contract because of various different fiscal problems. And those are the circumstances under which the U.S. Supreme Court has talked about the question of whether or not the burden should be more generally shared. It has nothing to do with the uniformity clause. What about his central argument that the debates in the Senate, the cabinets of dispensers, ostensibly indicate that the Department needs revenue, needs money to operate, so we have to enact the surcharge because of that, and he's saying that that violates the uniformity clause. How do you respond to that? It's really a red herring. The issue of funding mechanism is not what the uniformity clause is about. The uniformity clause is about the relationship between the taxing classification and what the money is spent on. Are you saying that the sponsors are saying that it's not been spent on pollution and things like that? Well, actually, the sponsors are saying, if you read the entire debates, the sponsors are saying, we need to adequately fund DNR, and we need to adequately fund DNR for all of the things that it does. They talk about the parks, but they also talk about other activities of DNR, and they talk about the fact that DNR has not been adequately funded. It is absolutely true that the purpose of this surcharge is to help fund DNR. It's actually part of a package of a number of different surcharges, and it's absolutely true that there was debate about whether that was the best way to fund DNR, but it's also true that there's no question that the purpose of what that money is going to is to fund DNR's activities, including their conservation activities, for which we've articulated a very reasonable relationship. Let's assume you can articulate, as he alluded to, an after-the-fact explanation that may not be consistent with the stated purposes of the legislators. As I was asking him, does the debates control the court's decision, and if not, why not? The debates don't control for several reasons. First and most importantly, Mr. Novoselsky's argument confuses statutory construction with arguments about the constitutionality of a statute. When we think about whether or not a statute is constitutional, first of all, they come with presumptions of constitutionality. And as the Supreme Court has pointed out, and you said, the question under a rational basis, state challenge, which is what we have here under the Uniformity Clause, is whether any set of facts can be reasonably considered to support the relationship at issue. So there's no case law that stands for the proposition, it's a legislative statement that totally controls the challenge under the Uniformity Clause? There's no case that says that? No. There's no case that says that. The cases are clear that it is the government's obligation in litigation to come forward with an explanation, only after the challenge has been raised. You mentioned a strong presumption of constitutionality, and that goes without saying that the legislators are equally aware of that at the time that they're passing legislation, not just on review, but they're aware of the Uniformity Clause and their obligations when they're debating. So they don't need to articulate their basis. They can, mostly what you hear is challenges. Yes, you hear challenges, and I'd add that the discussion about whether or not this, the DNR should be paid by general, funded primarily through general revenue, is a policy discussion. That's what they're talking about in the debates. They're discussing what is the best way to fund as a matter of policy, not whether or not there's a Uniformity Clause problem. The logic of Mr. Novoselsky's argument is that once something has been funded by general revenue, the legislature can never decide to impose a more targeted tax. Anything can be funded through general revenue, but the legislature can, as a matter of policy, decide to make different decisions about how to fund different aspects of government functions. To talk just very briefly about what is at issue here, again, the Illinois Supreme Court has been very clear, and it has been very clear, as a matter of fact, since the pension case, in the Marks v. Vandermetter case, about how to approach a Uniformity Clause challenge. We have not submitted Marks as supplemental authority to this Court yet, because it is not final, a petition for rehearing this pending, but the case is at 2015 IL 116226, and in that case, the Court considers a Uniformity Clause challenge and undertakes exactly the analysis that we are describing today. It looks to see if there is a rationale that makes sense, is there a reasonable relationship? And that's the second element that we're focusing on, right? Yes. So then can you articulate what is the relationship to the abject of the legislation that he's saying doesn't exist? There are two different relationships that I can articulate here today. One is the one adopted by the Circuit Court, which is that people who have cars are much more likely to visit the parks than are people who don't have cars. Second is the justification we provided below, that cars and roads that are necessary for cars to drive on cause pollution, degrade habitats, degrade the air quality, degrade the water quality, and the DNR's activities address those types of problems and ameliorate them. So asking people who have cars to help pay for those activities is indeed a reasonable relationship. What about if we don't agree with the basis articulated by the trial court? Does that preclude us from affirming the judgment? Absolutely not. The Court can affirm on any ground supported by the record. We asserted the conservation-based justification below, and we are reasserting it today. That is absolutely a legitimate basis for this Court to affirm. So you're also saying there's no case law that precludes the State from making a quote-unquote after-the-fetch argument that is not consistent with the legislative debate? Well, the short answer is yes. The cases clearly contemplate that the justifications provided during litigation will be after the fact. But I really want to take issue with the notion that our justifications are in any way inconsistent with the legislative debates here. The legislature was very, in addition to all the problems of looking to individual statements by individual senators and those problems of legislative intent, the legislature was very clear that what they really wanted to do was make sure that DNR had adequate funding. The fact that they were debating whether or not to provide that adequate funding through general revenue or through individualized, more targeted surcharges doesn't change the fact that the overall purpose was to provide adequate funding for DNR. How about the counsel's argument that in every other uniformity clause challenge that has been upheld, where the statute has been upheld, courts have looked to legislative intent and found some legislative intent? You know, I can't say that that's true in every single case. The courts sometimes look to legislative intent. They sometimes look to other evidence that might be available. For example, in the library services and GAHAs, they looked to some consulting reports that were available. But the Illinois Supreme Court has also said the government has no duty to provide that kind of information. It can, but it doesn't have to. This is like an equal protection clause rational basis challenge, where the government has the ability to articulate an after-the-fact rationale. The challenger can, unlike an equal protection challenge, try to underline that rationale on the facts or explain why it is not, in fact, an appropriate relationship. But plaintiffs here haven't done that. All they have argued is that the rationale we are proposing isn't the true rationale. But again, we dispute that. What the legislature was doing was trying to fund DNR. So in announcing a rule, what deference do we give to the legislative intent or history that he is hanging his head? I mean, obviously, his argument is that should be the major governing factor here in determining the constitutionality, clearly what the legislative intent was as referenced in the debates. So what rule gives that deference, the aspect of the deference to the legislative intent? The question of the constitutionality under the Uniformity Clause is really not a question about legislative intent. It's a question about the relationship between the taxing classification and what the money is being used for. Whether the legislature articulated or thought about that relationship is not part of the inquiry. So it's not a factor at all in your opinion? It's not. I don't think it needs to be. I also don't think in this case there's any inconsistency with what the legislature said and the argument we are making. What you're saying is it appears to be neutral because some senators were opposed to funding DNR this way and some senators, the proponents of the bill, were in favor of funding it. Yes. So it's a neutral argument. It's at best neutral. But overall, the proponents of the bill wanted to make sure DNR had adequate funding to do its work. And if plaintiffs wanted to, they could have gone out and taken videotape of our state parks and recreational facilities to trump your argument that it's really not primarily used by First Division vehicles and their occupants, right? Well, that was the Circuit Court's justification. That's the kind of thing, right. I suppose they could try to do that. I don't know that that would actually… Carry the day. Carry the day. But unlike an Equal Protection Clause rationale, that is the difference, I think, between a uniformity clause challenge and an Equal Protection rationale basis challenge. But under both, the state has the ability to articulate an after-the-fact rationale basis. And the state has no obligation to produce evidence under either type of analysis. So how do you articulate the burdens? Is there a primary pressure burden on the state? And then if the state comes forward, then ultimately the burden of somebody challenging a Constitutional enactment is on the person challenging it, right? Yes, that's exactly right. Is that how you view the burden? Yes, and that's what the Supreme Court has said repeatedly. And you believe you articulate that basis to shift the burden? Yes. The relationship between pollution caused by cars and caused by road construction and the conservation efforts of DNR, which has been the justification we have proposed from the beginning and which plaintiffs have never challenged, other than to say it doesn't count because the legislature was talking about funding mechanisms, not the purpose to which the money was being put. I do want to make one correction before I sit down. Although, as we've been discussing, it's not really material. It just does it for the record. In our brief, we said that the debates on May 31st did not pertain to the adoption of the $2 surcharge at issue. That's actually not accurate. The debates pertain to a package of 18 or so surcharges, including the surcharge at issue here. Likewise, it's true, as we said, that the bill did not pass on that date, but it did ultimately pass in the form that it was being debated. But as I've explained, the legislative history here and those points are really not material to the decision that this Court has to make. If there are no further questions, we ask that the Circuit Court be affirmed. Thank you. Thank you, Mr. Holmes. Let's hear from Ms. Baden-Ebach. Thank you. This may sound unusual, but I would urge the Court, even if the Court is going to affirm, publish, because we now have a brand-new and absolutely unique argument by the proponents of this legislation. The intent of the legislature doesn't matter. The Court can disregard it. You will not find that in my thread. I hate to say it's easy to do it. You tap into your Westlaw, and you search on your uniformity challenges in the Illinois Supreme Court. And the Marks case, which I'm very familiar with, looked at the stated intent of the legislature to say, if that's a rational basis, we're not going to go behind it. You have absolutely no case that would have the Court do what counsel just invited you to do. There is the other thing you're doing, according to counsel, that's frankly scrapping the uniformity clause and, in essence, declaring it de facto unconstitutional. And here's why. Her statement to you, and it's the argument they made below, is, all we have to do is stand up and say you're wrong. The burden of proof is the State must come up with a showing of a rational basis, not we'll articulate something. You're not going to find that. They have to point to something showing a rational basis. And they maintain that they have. No, sir, they have not. They admittedly created their own argument. They didn't say there is anything in the legislation, in publications, anything at all. They have no burden to present evidence. Yes, sir, they do. They have to present an argument. No, sir, I respectfully disagree. One case says that they have an evidentiary burden. Every case dealing with uniformity says they have to present evidence. No, sir, it says they have a burden of proof. It says once they meet their prima facie burden of showing a rational basis. I understand what you're saying. They can argue a rational basis. They don't have to present evidence to support that rational basis. Sir, I respectfully disagree because if that's the way it's articulated. What is the case that says that? There is no case that says a rational basis is created, and that's why I invite the Court to do it here in this decision. A rational basis can be created for the first time in a challenge. That if a government attorney, contrary to the statement of their own client, because that's who we have here. They've never disagreed. Contrary to the evidence that is in the record, can come up with a completely different. The Secretary of State's statement that he disagreed with. No, he sent it out to every taxpayer, everyone who renewed. No, they've never disagreed with that. They've never said to the contrary. That he disagreed with the. No, he said the basis was to supplement as a substitute for general revenue. What you just heard now was, that's okay. The legislature can use a surcharge in place of general revenue. Now, that is not what the Illinois Supreme Court has ever said. So if that is their rational basis, they should lose because that rational basis trumps the uniformity clause. And the argument I just heard. What is the uniformity clause for, other than to create special taxes or special surcharges? What is it for? It is to. So you can distinguish, make a rational basis, a distinction between those who are taxed and not taxed, correct? Among other things, yes, sir. And in the end, they have articulated, and the circuit court on different basis, found that there was a rational basis. Not the legislature's rational basis. Every case has examined this on the basis adopted by the legislature. This is the first case where it is not just no basis, but contrary to the basis adopted by the legislature. And Mr. Shapiro candidly said, well, let's assume that they meant to substitute this surcharge as a substitute for general revenue, which they clearly did. That's okay, because the courts will assume what they did was constitutional. If that's true, then you just lost the uniformity clause, because the legislature, presumably every statute, they are aware they're not supposed to violate some form of the Constitution. That makes a constitutional challenge worthless, an exercise in futility, and as the Supreme Court said in Boynton, it turns us into a rubber stamp, even if the legislature admittedly violates a portion of the Constitution. What you heard today was assumed for the sake of argument, they chose to fund general revenue by a surcharge. Once you get there, the problem becomes you can't do it. There's no uniformity clause, there is no equal protection due process, and we come back into what the Illinois Supreme Court did say in the pension case, you can't take money to fix a problem affecting everybody away from one group only. You know, what I've noticed in all of your arguments, which are very good, is that you kind of ignored the test, the distinction between First Division vehicles, Second Division vehicles, people who own and operate First Division vehicles versus the rest of the state. Yes, sir, I have, because the legislature never paid any attention to it. Well, we have to pay attention to the test. Which test, sir? Which test, sir? The uniformity test. The uniformity test, again, focuses on the bases upon which the surcharge was imposed, and the surcharge here, and again, you're not going to find a Supreme Court case, an appellate court case, or anything else that has ever said that you will independently come up with a rationale that is not only non-articulate. So you're arguing that we ignore the test articulated by the Illinois Supreme Court and simply look at the legislative intent, and if we don't find it there, then the statute's unconstitutional, correct? No, sir, I say you apply the test. That seems to be your argument. No, it is very respectfully, and I'm doing this for 42 years, and I know you don't get it on somebody's face, but to be blunt, sir, I don't, short of rolling over a plain bed. The test is whether or not there's a real and substantial difference between the people tax and those not taxed, and whether or not the taxpayer has some reasonable relationship to the object of the legislation of public policy. Yes, sir. The object of the legislation is to fund the agency generally as a substitute for general taxes. That is the intent, it says, to the intent of creating the surcharge. This surcharge, there is no evidence, there's no basis to argue, was done solely because vehicle class one is different from class two. No history, no effort. The test has now shifted to there is no test. So I'm saying if you apply the test, you have to find the rationale, and it says it, why the legislature chose to have a surcharge rather than make it a general tax. And not only is the test properly applied here, it's brand new. You have to come up with a rationale that is contrary to the statement of the legislature. So you're now changing not simply the judicial branch, you're saying that an argument presented contrary to the wish of the client, who's a member of the executive branch, which is articulated by the attorney, now trumps not just the legislative branch, the executive branch, and the court now becomes all three. Because this then becomes what, I don't agree with Justice Scalia, but he loves to talk about courts making legislation, making laws. The court now creates the law here. The court now finds the rationale contrary to what the other two branches said. All right, thank you, Mr. Unovasos. Thank you, sir. Time is up for rebuttal. I want to thank both counsel sincerely for the quality of their arguments here, the quality of their advocacy. Again, Justice Spence is a member of the panel. He will be participating in any decision arrived at by this court. We will take the matter under advisement, and a decision will render in due course. Thank you very much. We stand adjourned for the day subject to call. Thank you, sir. Thank you, sir.